USA v. Ojeikere

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Submitted: August 25, 2008                    Decided: October 7, 2008)

Docket No. 07-1970 -cr (L), 07-3127-cr (CON)

_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

DANIEL A. OJEIKERE, ALSO KNOWN AS DAVID R. JORDAN,

*Defendant-Appellant.*

_____

Before: NEWMAN, WINTER, and CALABRESI, *Circuit Judges.*

_____

Appeal from a judgment of conviction and order of restitution entered in the United States District Court for the Southern District of New York (Koeltl, *J.*).  We uphold the conviction and hold that the restitution order was proper, notwithstanding the victims' own allegedly dishonest motives, because the victims were not acting *in pari materia* with the defendant. Accordingly, the judgment and order are AFFIRMED.

_____

1

MARIA E. DOUVAS, Assistant United States Attorney, (Jonathan S. Kolodner, *of counsel*) *for* Michael J. Garcia, United States Attorney for the Southern District of New York, *for Appellee.*

DONNA R. NEWMAN, New York, N.Y., *for Defendant-Appellant.*

_____

CALABRESI, *Circuit Judge*:

On May 2, 2007, the United States District Court for the Southern District of New York (Koeltl, *J.*) entered a judgment of conviction against Daniel Ojeikere, finding him guilty of one count of wire fraud, 18 U.S.C. § 1343, and one count of conspiracy to commit the same. 18 U.S.C. § 371. The charges stemmed from Ojeikere's role in an "advance fees" scam that tricked victims into paying Ojeikere and his confederates to release large sums of money supposedly held in Nigeria. On July 3, 2007, following a sentencing hearing, the District Court sentenced Ojeikere to forty-three months in prison, three years of supervised release, and restitution in the amount of $679,132.82. On appeal, Ojeikere argues that the district court erred by applying a two-level supervisory role sentencing enhancement and by ordering restitution to the victims of the scheme.

Section 3B1.1(c) of the Guidelines requires a two level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five people and was not otherwise extensive. The Commentary clarifies that "[t]o qualify for an adjustment . . . the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants," U.S.S.G. § 3B1.1 cmt. 2, and that a "participant" is any "person who is criminally responsible for the commission of the offense, but need not have been

convicted." U.S.S.G. § 3B1.1 cmt.1. "To qualify for the enhancement, a defendant need only have managed or supervised one participant." *United States v. Birkin*, 366 F.3d 95, 101 (2d Cir. 2004). For the purposes of the supervisory role enhancement, the government must prove disputed facts by a preponderance of the evidence. *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005).

The Government argued for a supervisory role enhancement based on Ojeikere's alleged supervision of "Barbara Smith,"[1] who posed as his secretary when he adopted the persona "David Jordan" in order to effectuate the scheme. Ojeikere challenges the sentencing enhancement on two grounds: First, that the Government failed to prove that "Barbara Smith" was a criminally responsible participant in the advance fees scheme; and second, that the government failed to prove that Ojeikere managed "Barbara Smith." Having reviewed the evidence—including phone calls made by victims of the scheme to the supposed office of "David Jordan," which "Barbara Smith" answered—we agree with the District Court that "the purported Barbara Smith knowingly furthered the fraudulent scheme but played a subsidiary role to that of the defendant. The preponderance of the evidence shows . . . that the defendant managed and supervised his female criminal accomplice, and, therefore, a two-level enhancement is warranted under Section 3B1.1(c)."

Ojeikere also challenges the restitution order. "We review a district court's order of restitution for abuse of discretion." *United States v. Lucien*, 347 F.3d 45, 52 (2d Cir. 2003). The

---

[1] At trial the government argued that Ojeikere's wife Indongesit was "Barbara Smith," but Mrs. Ojeikere was acquitted. For the purposes of the supervisory role enhancement, however, the government did not need to prove that Indongesit Ojeikere was Barbara Smith. It needed only to show, by a preponderance of the evidence, that Mr. Ojeikere supervised Smith, whoever she was.

Mandatory Victims Restitution Act of 1996 ("MVRA") requires restitution in criminal cases where the offense is "an offense against property . . ., including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), and where "an identifiable victim . . . has suffered a . . . pecuniary loss." *Id.* § 3663A(c)(1)(B); *see also Lucien*, 347 F.3d at 53 ("Section 3663A, in contrast to § 3663, makes restitution mandatory for losses suffered by victims of certain crimes . . . and directs that restitution orders be issued and enforced in accordance with § 3664.") Under the MVRA, restitution must be ordered "to each victim in the full amount of each victim's losses . . . ." 18 U.S.C. § 3664(f)(1)(A).

Ojeikere acknowledges that "the 'victims' identified by the court sustained losses and thus, all fall within the definition of victims under a plain reading of the statute." He argues, however, that the victims' hands are too dirty to claim restitution, since they all participated in what they thought was a fraudulent scheme to obtain money from Nigeria, and were in effect co-conspirators. We have denied restitution where it "has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction." *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006). But unlike the coconspirators in *Reifler*, the victims here were *not* involved in the *offense of conviction*, which was a fraudulent scheme to obtain money from them. Whatever illegal scheme the victims thought they were involved in, it was not a scheme to lose their *own* money, which they earned fairly (as far as we know), lost, and now want returned.

We hold that restitution under the MVRA may not be denied simply because the victim had greedy or dishonest motives, where those intentions were not *in pari materia* with those of the defendant. Thus, a would-be burglar who is robbed by a potential accomplice before either of

4

them commits the planned crime may be entitled to restitution. On the other hand, restitution would not be appropriate if one burglar were to rob another of the proceeds of a heist they have just committed. *See, e.g.*, *United States v. Martinez*, 978 F. Supp. 1442, 1453 (D.N.M. 1997) ("It is intuitively obvious that Congress did not intend to have the federal judiciary take the lead in rewarding, through restitution orders, persons robbed of monies they had *obtained* by unlawful means, especially where as a matter of policy, federal courts generally would not award those monies were they sought in a civil action. This is especially true when the person who would benefit has violated federal laws.") (emphasis added and footnotes omitted). Because Ojeikere has not demonstrated that his victims lost ill-gotten gains, or that they were *in pari materia* with the scheme of which he was convicted, we AFFIRM the restitution order.