10-4431-cr
USA v. Hall

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of March, two thousand twelve.

Present:
　　　　ROBERT A. KATZMANN,
　　　　RICHARD C. WESLEY,
　　　　　　　*Circuit Judges*,
　　　　MARK R. KRAVITZ,
　　　　　　　*District Judge*.[*]

_____

UNITED STATES OF AMERICA,

　　　　*Appellee*,

　　　　　v.　　　　　　　　　　　　　　　No. 10-4431-cr

AISHA HALL, also known as AISHA ROCHESTER, also known as ASIA, also known as MIKE MITCHELL,

　　　　*Defendant-Appellant*,

DAYANA MENDOZA, JINNATE JONES, also known as JINNATE GRAYS, also known as JINNATE GLASPER, MARCEL ASBELL, also known as MARLOWE ANDERSON, WALTER BROWN, QUIANA CHESTNUT GANTER, JERJUAN GARDNER, also known as

---

[*]The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

HENRY HILL, also known as JUAN, JACK HORBULEWICZ, also known as JACK KALISZ, YOLANDA REEVES, also known as DEEDEE, VERONICA DAVIS,

     *Defendants*.[**]

---

| | |
|---|---|
| For Defendant-Appellant: | DANIEL NOBEL, Law Office of Daniel Nobel, New York, N.Y. |
| For Appellee: | WINSTON M. PAES (Jo Ann M. Navickas, Allon Lifshitz, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y. |

Appeal from the United States District Court for the Eastern District of New York (Gleeson, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant Aisha Hall appeals from that portion of a January 10, 2011 amended judgment ordering Hall to pay $6,850,000 in restitution following her conviction, pursuant to a plea agreement, for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. On appeal, Hall argues that the restitution order violated the substantive and procedural requirements of the Mandatory Victim Restitution Act ("MVRA"), codified largely at 18 U.S.C. §§ 3663A and 3664, and that the restitution order improperly rewarded individuals whose intentions were *in pari materia* with those of the defendants. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

---

[**]The Clerk of the Court is directed to amend the caption as noted.

"[W]e review the district court's restitution order deferentially, reversing only if in our view the trial court abused its discretion." *United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008). "To identify such abuse, we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted).

We turn first to Hall's argument that the district court erred by failing to adhere to the procedural requirements set forth in 18 U.S.C. § 3664. This argument is without merit. Contrary to Hall's assertion on appeal, the district court satisfied the procedural requirements of 18 U.S.C. § 3664(a), which provides that the court "shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." The statute specifies that "[t]he report shall include, to the extent practicable, a complete accounting of the losses to each victim." *Id.* However, "[i]f the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." *Id.* In this case, the Probation Department prepared a presentence report ("PSR") indicating that the government had identified two victims of Hall's fraudulent scheme whose losses totaled $5,350,000. The PSR also indicated that the offense "involved over 50 victims, the majority of which have not been identified and for which specific loss amounts are unknown." PSR ¶ 133. Accordingly, the district court held open the restitution order, *see Dolan v. United States*, 130 S. Ct. 2533, 2537 (2010), and subsequently received a list of fifteen victims from the government. The district court then ordered the government to obtain

3

affidavits from each of the fifteen victims detailing the amount of loss they had incurred and how they had been victimized, notwithstanding the fact that the production of such affidavits is not required under the statute. *See* 18 U.S.C. § 3664(d)(2)(A)(vi); *United States v. Pickett*, 387 F. App'x 32, 36 (2d Cir. 2010) (summary order) ("Nothing precludes a court from ordering restitution in the absence of such affidavits."). After the government provided the district court with thirteen affidavits, the district court held a lengthy restitution hearing and solicited briefing from the parties. Only after this extended and careful process did the district court issue an order of restitution on December 17, 2010. Accordingly, we conclude that the district court committed no procedural error in fashioning its restitution order.

We turn next to Hall's argument that the victims of the fraud were not directly and proximately harmed by Hall's conduct. The MVRA defines the term "victim" broadly to include any:

> person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2); *see also United States v. Marino*, 654 F.3d 310, 317 (2d Cir. 2011) (noting that the MVRA defines "victim" broadly). The legislative history of the MVRA suggests that "Congress's intent to expand restitution as a remedial measure cautions against a rigid 'direct' causation standard that would foreclose restitution where even the slightest intervening event severs factually or temporally the link between defendant's crime and victim's loss." *Marino*, 654 F.3d at 319.

In this case, Hall's conviction stems from her role as owner and chief executive officer of Apogee Financial, a business purportedly engaged in the sale of "Proof of Fund" letters to

4

clients. Apogee represented that, in exchange for substantial fees, it could enable the client to "lease" large sums of money that would be deposited into an account bearing his name for the sole purpose of permitting the client to demonstrate he had the credit worthiness required for participation in supposedly lucrative special investment vehicles. However, when clients purchased Apogee's "leased-funds services," Apogee's principals and employees did not, in fact, open bank accounts in the clients' names. Instead, Apogee printed false Proof of Funds letters on bank stationary and recruited employees at various banks and financial institutions to falsely verify that the accounts existed and contained funds.

Hall's theory on appeal is that the victims seeking restitution in this case were "beguiled by their 'trusted friends,'" independently of any relationship they may have had with Hall, into believing that the supposedly lucrative investment vehicles requiring the Proof of Funds letters would generate substantial returns. Pl.'s Br. 22. This argument is unavailing. The loss claimed by the victims here is not the *lost profit* resulting from the failure of the investment vehicles but rather the *fees* paid by clients to purchase the entirely fraudulent Proof of Funds letters from Apogee. In other words, the fact that the investment vehicles for which the Proof of Funds letters were sought were likely to fail has no bearing on the clearly proven fact that the victims paid Apogee and its brokers for Proof of Funds letters but instead received completely fraudulent documents. As the owner of Apogee, Hall controlled the entire fraudulent operation and was directly responsible for causing Apogee's clients to pay fees for the fake letters. Among other things, for example, Hall controlled Apogee's bank accounts and drafted the advertisements for Apogee claiming it had access to millions of dollars that it could lease to clients for substantial fees. Moreover, Hall's argument overlooks the fact that, having been convicted of the crime of

conspiracy, Hall's criminal conduct "encompasses not just [her] own acts but also those of [her] co-conspirators." *United States v. Battista*, 575 F.3d 226, 231-32 (2d Cir. 2009). Accordingly, there is no merit to Hall's contention that victims of the fraud were not directly and proximately harmed by her conduct.

Finally, we consider Hall's argument that the district court erred in granting $4,850,000 in restitution to Cash Flow Financial, LLC because its CEO, Alan J. Watson, was "in *pari materia* with the conspiracy of which he claims to be a victim." Def.'s Br. 24. This argument is foreclosed by our decision in *United States v. Ojeikere*, 545 F.3d 220 (2d Cir. 2008). In *Ojeikere*, the victims seeking restitution had participated in what they thought was a fraudulent scheme to obtain money from Nigeria, but what was in fact a separate conspiracy by the defendant to obtain money from the victims themselves. *Id.* at 222. Although the defendant argued that the victims' hands were "too dirty" to qualify for restitution, we held that the claimants were properly found to be victims under the MVRA because they were "*not* involved in the *offense of conviction*, which was a fraudulent scheme to obtain money from them." *Id.* at 222-23. In other words, the victims were not co-conspirators in the charged conspiracy, and "[w]hatever illegal scheme the victims thought they were involved in, it was not a scheme to lose their *own* money, which they earned fairly . . . , lost, and now want returned." *Id.* at 223. As we explained by analogy:

> [A] would-be burglar who is robbed by a potential accomplice before either of them commits the planned crime may be entitled to restitution. On the other hand, restitution would not be appropriate if one burglar were to rob another of the proceeds of a heist they have just committed.

*Id.* So too in this case, Watson was not a co-conspirator in Hall's scheme. Even assuming *arguendo* that Watson had "greedy or dishonest motives," *id.*, he was certainly not engaged in a

6

scheme to lose his own money.  Accordingly, the district court did not abuse its discretion in ordering Hall to pay $4,850,000 in restitution to Cash Flow Financial, LLC.

We have considered Hall's remaining arguments and find them to be without merit.  For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK