**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3192
No. 97-3193

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| McCord, Inc.; Loyd E. McCord, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: January 13, 1998
Filed: May 7, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and KYLE,[*] District Judge.

_____

LOKEN, Circuit Judge.

Loyd McCord is the president and sole shareholder of McCord, Inc., an interstate trucking company. A United States Department of Transportation ("DOT") investigation revealed that McCord, Inc., employees had been systematically falsifying truck driver duty status forms ("driver logs") to conceal non-compliance with DOT hours-of-service regulations. McCord and the company pleaded guilty to violating 18

_____

[*]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

U.S.C. § 1001, which prohibits the making of materially false statements in matters within the jurisdiction of federal departments and agencies. They appeal their sentences. The principal issue is whether the district court[1] erred in applying the five-level sentencing enhancement in USSG § 2F1.1(b)(4)(A) for fraud offenses that involve "the conscious or reckless risk of serious bodily injury." We affirm.

DOT regulations impose hours-of-service limitations on truck drivers. Regulated motor carriers may not permit their drivers to drive more than ten hours after an eight-hour break, more than sixty hours per week, more than seventy hours in an eight-day period, or after having been on duty fifteen hours. See 49 C.F.R. § 395.3. To enforce these limitations, the regulations further provide that commercial motor carriers must require drivers to record their "duty status" for each twenty-four-hour period, detailing on a prescribed form their time spent driving, resting in the vehicle's sleeper berth, on-duty but not driving, and off duty. See 49 C.F.R. § 395.8(b).

Advised that McCord, Inc., was falsifying driver logs, DOT investigators discovered that the company hired others to fill out logs for the drivers, and that logs systematically reflected the presence of a second or "ghost" driver on long trips, creating the false impression that two drivers had taken turns driving and sleeping when in fact a single driver had done all the driving. Sixteen hundred McCord, Inc., logs were found to contain such falsehoods. These prosecutions followed.

Pursuant to written plea agreements, McCord and the company agreed to plead guilty to one-count informations charging violations of 18 U.S.C. § 1001. The district court withheld approval of the plea agreements until Presentence Investigation Reports were available. The government persuaded the probation office to recommend § 2F1.1(b)(4)(A) enhancements, which increased defendants' base offense levels from

---

[1]The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas.

eight to thirteen. McCord and the company argued this was a breach of the plea agreements. At sentencing, the district court found the agreements ambiguous on this issue and rejected them, giving defendants an opportunity to withdraw their guilty pleas. McCord, acting for himself and the company, adhered to the guilty pleas, and the court proceeded with the sentencing hearing.[2] After hearing evidence and argument, the district court imposed § 2F1.1(b)(4)(A) enhancements. The court sentenced McCord to twelve months in prison and two years supervised release. It imposed a fine of $15,000 on McCord and a $100,000 fine on the company, to be offset by payment of McCord's individual fine.

## The § 2F1.1(b)(4)(A) Issue.

The Major Fraud Act of 1988 enacted 18 U.S.C. § 1031, which prohibits major procurement fraud against the United States. Pub. L. No. 100-700, 102 Stat. 4631. In addition, § 2(b) of that Act instructed the Sentencing Commission to promulgate guidelines "for appropriate penalty enhancements, where conscious or reckless risk of serious personal injury resulting from the fraud has occurred." In response, the Commission amended § 2F1.1, which establishes base offense levels for fraud offenses. As amended, § 2F1.1(a) provides that the base offense level is six, and § 2F1.1(b) adds enhancements for specific offense characteristics, which now include:

> (4) If the offense involved (A) the conscious or reckless risk of serious bodily injury . . . increase by 2 levels. If the resulting offense level is less than level 13, increase to level 13.

---

[2]On appeal, McCord and the company argue the district court abused its discretion in rejecting the plea agreements and urge us to compel specific performance. However, the agreements expressly preserved the government's right to "make all facts known to the probation office and to the court." Moreover, the agreements did not bind the district court at sentencing. As defendants elected not to withdraw their guilty pleas, there is no specific performance that would affect their sentences.

§ 2F1.1(b)(4)(A). Rather than limit this amendment to procurement frauds, the subject of the Major Fraud Act of 1988, the Commission concluded that the enhancement "should apply to all fraud cases involving a conscious or reckless risk of serious bodily injury." USSG App. C, Amend. 156. Applying this enhancement, the district court determined that the base offense level for both McCord and McCord, Inc., is thirteen. On appeal, defendants argue that the enhancement does not apply to their offenses for a number of reasons.

First, relying on the Major Fraud Act's legislative history, McCord and the company argue that § 2F1.1(b)(4)(A) is limited to convictions for procurement fraud violations of 18 U.S.C. § 1031. We disagree. The Sentencing Commission concluded that a risk-of-serious-bodily-injury enhancement is appropriate for all fraud offenses. This is well within the Commission's general Guidelines authority, and nothing in the Major Fraud Act or its legislative history suggests an intent to *limit* the Commission to an enhancement for procurement fraud. See S. Rep. No. 100-503 (1988), reprinted in 1988 U.S.C.C.A.N. 5969. Therefore, we are bound to apply the enhancement as written, which encompasses fraud convictions under 18 U.S.C. § 1001 as well as 18 U.S.C. § 1031. See generally Stinson v. United States, 508 U.S. 36, 42 (1993).

Second, McCord and the company argue that a sentence under 18 U.S.C. § 1001 for their offenses may not exceed the criminal penalties authorized in the more specific Motor Carrier Safety Act. See 49 U.S.C. § 521(b)(6). However, 18 U.S.C. § 1001 has no maximum sentence, and there is nothing in 49 U.S.C § 521 suggesting an intent to repeal or supersede 18 U.S.C. § 1001. Therefore, the government may prosecute under § 1001 even if the Motor Carrier Safety Act provided another basis for prosecuting the same conduct. See United States v. Batchelder, 442 U.S. 114, 123-24 (1979); United States v. Oliver, 908 F.2d 260, 264 (8th Cir. 1990).

Having rejected McCord's threshold legal arguments, we come to the main issue on appeal, whether the government proved by a preponderance of the evidence that the § 2F1.1(b)(4)(A) enhancement applies to these offenses. The government's evidence at sentencing consisted of the testimony of a DOT Special Agent who assisted in the investigation. She testified that 1600 driver logs falsely concealed hours-of-service violations. She also provided foundation for the admission of a 1990 National Transportation Safety Board nationwide study of the effects of alcohol, drugs, fatigue, and medical factors on 182 truck accidents in which the driver was killed. This study concluded that driver fatigue was a factor in thirty-one percent of the accidents, that nineteen percent of the drivers had been driving hours in excess of those permitted by the DOT regulations, and that accident rates increase as drivers go beyond eight hours of continuous driving. The government argued to the district court, and asserts on appeal, that this evidence provided an adequate factual basis to impose the § 2F1.1(b)(4)(A) enhancements. We disagree.

The enhancement applies when fraud involves "conscious or reckless risk of serious bodily injury." The normal meaning of reckless in the criminal law (unlike the civil law) is that the defendant disregarded "a risk of harm of which he is aware." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). In an unrelated part of the Guidelines, the Sentencing Commission adopted the criminal law meaning of the term reckless in explaining its involuntary manslaughter Guideline:

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

USSG § 2A1.4, comment. (n.1). We conclude that the Commission intended this meaning in § 2F1.1(b)(4)(A) as well. Therefore, the government must prove not only

that the fraudulent conduct created a risk of serious bodily injury, but also that each defendant was in fact aware of and consciously or recklessly disregarded that risk.

Some fraudulent schemes include such obvious risks of serious bodily injury that the criminal recklessness of their perpetrators will be self-evident, such as the defendant who intentionally caused car accidents as part of the insurance fraud in United States v. Hoffman, 9 F.3d 49 (8th Cir. 1993), cert. denied, 114 S. Ct. 1320 (1994), or the doctor who performed unnecessary surgery as part of the Medicaid fraud in United States v. Laughlin, 26 F.3d 1523 (10th Cir.), cert. denied, 513 U.S. 965 (1994). But for most frauds, risk of serious bodily injury is less direct or less obvious. In those cases, the § 2F1.1(b)(4)(A) enhancement requires evidence of risk related to the particular defendant, as there was in United States v. Turner, 102 F.3d 1350, 1359 (4th Cir. 1996), where defendants falsely certified that miners had received training required by the Federal Mine Safety and Health Act, and the court affirmed application of the enhancement because of "the myriad of safety problems experienced over the years at [defendants' mine], the general danger of underground mining, and the potential risks that could arise as a result of having untrained miners in that setting."

In this case, while hours-of-service regulations are undoubtedly motivated in part by safety concerns, the limitations in the current DOT regulations have been in effect for many decades. The government has not explained their specific relation to fatigue and safe motor vehicle operation. Therefore, particularized proof of a defendant's knowledge of a safety risk created by particular recordkeeping violations is necessary to prove criminal recklessness. The government's proof at sentencing fell far short of establishing such recklessness by Loyd McCord. In her direct testimony, the government's witness did not explain what specific hours-of-service violations had been uncovered and how they relate to motor carrier safety. She did not explain McCord's role in the falsification of driver logs (the enhancement may not be based solely upon strict liability for the corporate owner or chief executive officer). And she did not refute McCord, Inc.'s, excellent safety record during the period in question.

For these reasons, if the record ended with the government's case-in-chief at sentencing, we would reverse the imposition of a § 2F1.1(b)(4)(A) enhancement on Loyd McCord. But the record consists of much more than the direct testimony of the DOT Special Agent and the 1990 NTSB study. First, on cross exam, the DOT Special Agent testified that one driver log reported a driver and a ghost driver who drove 1528 miles in thirty hours; a single driver *averaging* sixty-five miles per hour would get less than seven hours sleep during that trip. The agent further testified that she interviewed a driver who said he was once so fatigued from driving too many hours that he checked himself into a hospital, and a former driver who said that he quit driving for McCord, Inc., because he "was run too hard." While this hearsay may be of questionable reliability because DOT stopped investigating once the plea agreements were negotiated, and because the government offered no supporting driver testimony, the district court was entitled to give it some weight.

Second, defendants presented testimony by a transportation consultant hired to implement a compliance program after the violations were uncovered. This witness testified that when he began the program he encountered strong resistance to hours-of-service compliance from the company's drivers and dispatchers. This testimony suggests that the violations here at issue reflected a pervasive corporate environment in which safety concerns were of low priority.

Finally, and in our view most significantly, the district court questioned Loyd McCord at length before ruling on this issue. McCord -- an experienced truck driver -- admitted that his company was found guilty of previous hours-of-service violations in 1988 and again in 1994. He admitted knowing the ghost driver practice had continued, knowing it was wrong, and failing to end the practice when he could have done so. He also knew the company hired others to complete the false driver logs, a violation of the regulation requiring drivers to maintain their logs personally.

We review a district court's factual findings at sentencing for clear error. <u>See United States v. Wells</u>, 127 F.3d 739, 744-45 (8th Cir. 1997). Given the large number of violations, the general risks to drivers and others of driving large trucks while fatigued, the specific evidence of particular McCord, Inc., drivers driving while seriously fatigued, and Loyd McCord's admissions that he was aware of repeated, systematic hours-of-service violations and chose not to put an end to these unlawful practices, we conclude that the district court did not clearly err in finding that the offenses to which McCord and the company pleaded guilty involved a conscious or reckless risk of serious bodily harm.

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.