Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

LOUIS N. NOMAR,
          *Defendant-Appellant.*

No. 03-4770

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, District Judge.
(CR-02-91)

Submitted: March 31, 2004

Decided: April 15, 2004

Before WIDENER, WILKINSON, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

### COUNSEL

Mary Lou Newberger, Federal Public Defender, Edward H. Weis, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, L. Anna Crawford, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Louis N. Nomar pled guilty to conspiracy to commit wire fraud via the internet, 18 U.S.C. § 371 (2000), and escape, 18 U.S.C. § 751(a) (2000), and was sentenced to a term of seventy-seven months imprisonment. He contests on appeal the district court's determination that his offense created a risk of serious bodily injury. *U.S. Sentencing Guidelines Manual* § 2F1.1(b)(7)(A) (2000). We affirm.

While he was serving a term of supervised release resulting from prior convictions, Nomar and co-defendant Yolanda Monroe set up an internet pharmacy and physician's service. Customers provided general information about their medical condition and current prescription medication as well as a credit card number, and were required to complete a disclaimer form posted on the website by which the customer "accept[ed] the risk of substantial and serious harm and/or complications from taking treatments prescribed by Online Physician Service." Posing as licensed physicians, Nomar or Monroe then gave a brief telephone consultation for which they charged $120, and forwarded a new prescription to a legitimate pharmacy which mailed the prescription to the customer. The majority of the prescriptions they wrote were for Schedule III and IV drugs, including hydrocodone, Valium, Xanax, Vicodin, Loritab, and Tylenol with codeine. After Nomar became the target of a federal investigation, his supervised release was revoked. He cooperated, but following his indictment for conspiracy he escaped from custody and was apprehended a few days later. He subsequently pled guilty to conspiracy and escape.

At Nomar's first sentencing hearing in August 2002, the court added two offense levels under § 2F1.1(b)(7)(A), finding that the fraud conspiracy involved "the conscious or reckless risk of serious bodily injury" to his customers. A "serious bodily injury" is defined in the sentencing guidelines as an "injury involving extreme physical

pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1, comment. (n.1(j)). Nomar acknowledged that the volume of pain-killing drugs he prescribed indicated that a large number of his customers were addicted to the pills they bought. However, he argued that the enhancement was not warranted because (1) the government had not produced evidence that any specific patient was in danger of suffering serious bodily injury from using his prescriptions, (2) there was no evidence that the drugs he prescribed for any particular patient created a risk of serious bodily injury if taken as prescribed, and (3) there was no showing that he was aware of any risk. He argued that addiction did not qualify as a serious bodily injury. The government introduced without objection pages from the *Physician's Desk Reference* containing special warnings and precautions pertaining to the drugs Nomar prescribed.

The district court rejected Nomar's argument that the enhancement was not warranted in the absence of proof that any specific customer was injured and found that Nomar

> was fully aware of the serious risk associated with prescribing medications in the manner described by the Government, as demonstrated by the disclaimer posted on the Physician Online Service's website. He consciously and recklessly created the risk because he was fully aware he was not qualified to prescribe medications and that patients could be severely harmed as a result of drug interactions, allergic reactions, and overdose because the victims took drugs prescribed by an untrained individual.

The court imposed a sentence of sixty months (the statutory maximum) for the conspiracy count to be followed by a consecutive sentence of seventeen months for the escape conviction.

While Nomar's appeal was pending, the parties jointly moved to remand his case to the district court to permit reconsideration of the amount of restitution and we remanded the case as requested. A second sentencing hearing was held in September 2003. At this hearing, after the district court reduced the amount of restitution, Nomar again

contested the enhancement for risk of serious bodily injury. In an attempt to show that he had not acted with reckless disregard for his customers, Nomar presented to the court two government exhibits that had been introduced at Yolanda Monroe's sentencing. First, an e-mail from a customer who was unhappy with the effect of the prescription she had received and was requesting something stronger. Nomar had written on it, "Do not fill. I am refunding 120 this one. Doc." Second, an e-mail notification that a payment for hydrocodone had been made to Nomar's account. He had written on it, "Put on hold untill (sic) other Rx is used up." Nomar argued that these exhibits showed that he prescribed medication appropriately. The district court held to its previous ruling, finding that two instances of caution on Nomar's part did not outweigh the risks he created for hundreds of other customers for whom he prescribed drugs. The court re-imposed the same sentence of imprisonment.

On appeal, Nomar maintains that the enhancement was error because it was based on a purely conjectural risk. Nomar alleges that the customers who were addicts were not seeking medical help from him, and that the government failed to show either (1) that any particular customer had a condition that posed a risk of serious bodily injury through lack of proper treatment or from taking the prescribed dose of the drugs he prescribed, or (2) that he was aware of any such condition. He argues that a showing of particularized risk to one or more of his customers is required by *United States v. Vivit*, 214 F.3d 908, 920-22 (7th Cir. 2000) (holding that doctor engaged in insurance fraud created risk of a serious bodily injury by failing to adequately examine patients who consulted him after automobile accidents, including one who had extremely high blood pressure, but created only slight risk to other patients by failing to supervise unlicensed physical therapist and advising heat therapy for bruised areas). The district court's determination that the defendant's conduct created a risk of serious bodily injury is a factual finding which is reviewed for clear error. *Vivit*, 214 F.3d at 920; *United States v. McCord*, 143 F.3d 1095, 1099 (8th Cir. 1998).

We conclude that the district court did not clearly err in deciding that there is an inherent risk of serious bodily injury in having a person with no medical training dispense controlled substances over the phone. Some fraud schemes "include such obvious risks of serious

bodily injury that the criminal recklessness of their perpetrators will be self-evident." *McCord*, 143 F.3d at 1098. A finding of particularized risk is necessary only in cases where the risk is "less serious or less evident." *Id.* Nomar's reliance on *Vivit* is misplaced because that case makes the same distinction. 214 F.3d at 921. *Vivit* does not hold that the government must in every case identify a particular person who was placed at risk by the defendant's actions in order for the enhancement to apply, but rather must show that "the defendant's fraudulent course of conduct created a risk that others would suffer serious bodily injury." *Id.*

At the first sentencing hearing, the district court noted the "warnings, precautions and special risk patient notation" set out in the *Physician's Desk Reference* concerning the drugs Nomar prescribed. For example, the court noted that, for most of the drugs Nomar dispensed, "psychic and physical dependence were significant risks," and with respect to the hydrocodone-based drugs, there was a risk of respiratory depression. The same drugs posed a special risk for elderly or debilitated persons, and an overdose could result in "apnea, circulatory collapse, cardiac arrest, and death . . . ." The district court found that, as a non-physician who had never examined his customers and did not know their full medical histories, Nomar was not in a position to be able to judge whether it was safe for any particular person to take the drugs he prescribed.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*