**UNITED STATES of America,
Plaintiff,**

v.

**William BENTON, Defendant.**

**No. 03–CR–154.**

United States District Court,
E.D. Wisconsin.

June 17, 2004.

---

Gail J. Hoffman, Milwaukee, WI, for Plaintiff.

Brian P. Mullins, Milwaukee, WI, for Defendant.

## SENTENCING MEMORANDUM

ADELMAN, District Judge.

### I.

Federal law provides that no person may operate an aircraft unless, within the preceding 12 calendar months, the plane has undergone an annual inspection and been approved for return to service by a certified airman. *See* 14 C.F.R. § 901.409. In the fall of 1998, defendant William Benton, an aircraft dealer, sold two airplanes which purportedly had been inspected within the previous year. However, unbeknownst to the buyers, defendant had forged (or caused to be forged) the signatures of certified airmen in the maintenance logbooks for the two planes falsely certifying that the planes had received annual inspections. Defendant completed a third sale under similar circumstances in October 1999.

Eventually, one of defendant's customers grew suspicious and tracked down the airman who had supposedly inspected his plane. When the mechanic denied performing the inspection or even knowing a William Benton, the customer reported defendant to the Federal Aviation Administration (FAA). An investigation was commenced, which culminated in defendant's indictment on two counts of making false statements to the FAA. Defendant later pled guilty to an information charging him with causing a person to operate an aircraft knowing that the fuel system did not comply with FAA regulations. Specifically, in August 1998, he directed one of his employees to fly a plane from Waukesha to Baraboo knowing that the plane's fuel system was non-compliant and that the plane had not received required inspection and maintenance.

A pre-sentence report (PSR) was prepared, which recommended that defendant receive a two level enhancement because

the offense involved "the conscious or reckless risk of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(11)(A) (2003); U.S.S.G. § 2F1.1(b)(6) (1998).[1] The PSR states:

> The defendant's conduct involved the forging of annual aircraft log books indicating the aircraft had been deemed airworthy. Because Mr. Benton was not certified to determine if an aircraft was air worthy, he acted in a reckless manner which could have caused death or serious bodily injury as any aircraft that is not air worthy is a dangerous vehicle. According to the Federal Aviation Administration, the annual inspection is deemed to be an exhaustive review of the entire aircraft and its ability to safely operate. Because the defendant's conduct created a reckless risk of bodily injury or death, the offense level is increased to 13.

(PSR ¶ 27.) Defendant objects.

## II.

The application notes to § § 2B1.1 & 2F1.1 do not define "conscious or reckless risk." However, in *United States v. Vivit,* 214 F.3d 908, 920–21 (7th Cir.2000), the court adopted the definition from § 2A1.4 application note 1, which "describes recklessness as 'a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" The guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n. 1(L). The question under this provision is not whether an "actual injury occurred, but whether the defendant's fraudulent course of conduct created a risk that others would suffer serious bodily injury." *Vivit,* 214 F.3d at 921.

■ The government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement should apply. *United States v. Ewing,* 129 F.3d 430, 434 (7th Cir.1997). Although the preponderance standard is lower than that required to establish guilt beyond a reasonable doubt, "it is not without rigor." *United States v. Wise,* 976 F.2d 393, 402 (8th Cir.1992).

> [I]f the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.

*Id.* at 403; *see also United States v. Greene,* 71 F.3d 232, 236 (6th Cir.1995) (reversing enhancement for risk of serious bodily injury based on conclusory assertion that defendant, who falsely held himself out as licensed physician's assistant, repre-

---

**1.** The PSR calculated defendant's offense level under U.S.S.G. § 2F1.1 (1998) because, assuming application of the enhancement for risk of injury, the 1998 guidelines provide for a lower total offense level than the current guidelines. *See* U.S.S.G. § 1B1.11 (stating that court should use guidelines in effect on date defendant is sentenced unless doing so would violate the ex post facto clause, in which case court must use guidelines in effect on date offense of conviction was committed). However, if the enhancement for risk of injury is inapplicable, § 2B1.1 (2003) produces a lower total offense level.

sented a serious threat to patients he came into contact with).

## III.

There can be little doubt that an airplane actually operating in a state of disrepair can create a risk of death or serious bodily injury. *See United States v. Cannon,* 41 F.3d 1462, 1467 n. 3 (11th Cir. 1995). The issue is whether defendant's fraudulent assertion that these three planes had undergone annual inspections in fact created such a risk, and, if so, whether defendant was aware of such risk.[2]

The government and the PSR's primary argument is that, because annual inspections serve a safety purpose, defendant's failure to ensure that the planes involved in the present case were inspected ipso facto created a risk of serious bodily injury. The PSR includes a letter from an FAA supervisor, which indicates:

> By regulation, all civil aircraft are required to be inspected at regular intervals by properly certified airmen. These inspections are necessary to ensure that each aircraft is in an airworthy condition prior to being operated. These inspections are required to be recorded in the permanent maintenance records so that the owner/operator of the aircraft can verify that all required inspections have been completed.
>
> The FAA considers falsification of these required records to be one of the most significant violations of the Federal Aviation Regulations. If the owner/operator and the FAA cannot rely on the record of these inspections as being accurate, the safety of the pilot, the pas-

sengers as well as the people and property on the ground could be in jeopardy.

■ Reasonable as this position may be as a general matter, I cannot conclude that it is sufficient to justify application of the enhancement in this case. Certainly, the FAA's inspection regime serves an important safety purpose. But the mere fact that a plane was not inspected on time does not automatically mean that it has become dangerous. By way of comparison, many states require periodic inspections of automobiles. It is a violation of law to operate a vehicle that is overdue for inspection. However, a vehicle overdue for inspection is not necessarily unsafe. *See United States v. McCord,* 143 F.3d 1095, 1098–99 (8th Cir.1998) (holding that defendant's violation of transportation regulations, which were motivated in part by safety concerns, did not by itself justify imposition of the enhancement).

Assuming, *arguendo,* that a defendant's failure to comply with an inspection requirement could support the enhancement, the government has presented no evidence indicating that, in general, planes "out of annual" are unsafe. The government's position is further weakened by the absence of any evidence that the planes in question were out of compliance for an extended period of time. Rather, defendant's falsification caused the planes to miss just one annual inspection. Nor has the government presented evidence demonstrating that any of the planes defendant sold were unsafe. While a subsequent inspection of one of the planes revealed that some minor repairs were needed, it did not indicate

---

**2.** There is some disagreement in the courts of appeals as to whether the defendant must subjectively know that his conduct creates a risk before the enhancement may be applied. *Compare United States v. Lucien,* 347 F.3d 45, 56 (2d Cir.2003) (no); and *United States v.* *Johansson,* 249 F.3d 848, 858–59 (9th Cir. 2001)(no); *with United States v. McCord, Inc.,* 143 F.3d 1095, 1098 (8th Cir.1998) (yes). The Seventh Circuit appears to have sided with *McCord. See Vivit,* 214 F.3d at 920–21.

that this deficiency rendered the plane unsafe.

Further, the government has failed to show that defendant was aware that any of the planes involved was in such condition of disrepair that there was a risk of death or serious bodily injury. While he was aware that the planes had not been inspected as required by law, there is no evidence that defendant was aware of any defects that went unremedied due to the lack of inspection. *Cf. Vivit,* 214 F.3d at 922 (affirming imposition of enhancement where defendant-doctor failed to perform certain medical procedures on patients he knew were injured). The evidence shows that defendant falsified the log books to save money—annual inspections can cost thousands of dollars—not to cover up problems relating to the safety of the planes.

Finally, the PSR and the government note that defendant's customers felt jeopardized upon learning that the planes defendant sold them had not been properly inspected. While their anger is understandable and justified, it is not a sufficient basis for a sentencing enhancement. I do not consider the issue from the perspective of the victims. Rather, the government must show that defendant's conduct created a risk of death or serious bodily injury, of which the defendant was subjectively aware, and that the risk was of such magnitude that disregard of it was a gross deviation from reasonable conduct. In the present case, the government failed to establish that defendant's conduct created such a risk, much less that defendant was aware of it. Therefore, the enhancement does not apply.

### IV.

Because the enhancement is inapplicable, defendant's offense level is properly calculated under § 2B1.1 (2003). The base level is 6, plus 4 for amount of loss, and minus 2 for acceptance of responsibility, producing a total offense level of 8. Combined with defendant's criminal history category of II, the imprisonment range is 4–10 months, placing defendant in Zone B of the sentencing grid. *See* U.S.S.G. § 5C1.1. I sentence defendant to five years of probation, with the condition that he serve four months of home confinement. Other conditions are set forth in the judgment.