T.C. Summary Opinion 2009-81

UNITED STATES TAX COURT

HATEM ELSAYED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8935-07S.                    Filed May 26, 2009.

<u>Peter A. Lowy</u>, for petitioner.

<u>David B. Mora</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner is entitled to deduct unreimbursed employee business expenses in excess of the amount that respondent allowed for 2004; and (2) whether petitioner is entitled to a filing status of married filing jointly for 2004.[1]

### Background

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Texas.

Petitioner was employed as a truck driver in 2003, a job he maintained through the end of 2004. He did not own or lease a truck; rather, he drove trucks owned by his employers. In 2004 petitioner worked for two corporations, Swift Transportation (Swift) and A-Z Transportation (A-Z). Swift and A-Z were related businesses in that Swift owned A-Z or leased its assets. Consequently, their driver reimbursement policies, discussed below, were identical. Petitioner transported many types of

---

[1]The notice of deficiency included a sec. 6662 accuracy-related penalty for 2004. Petitioner did not dispute the penalty in his petition or at trial. Therefore petitioner is deemed to have conceded the issue. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358, 364-365 (2002).

shipments, including regular freight and hazardous materials, and he drove to destinations throughout the continental United States. Petitioner maintained a home in Texas, but he was an active driver during 2004 logging 268 days away from home.

Swift and A-Z reimbursed their drivers for certain expenses including tolls, scales, showers, truck supplies, truck washes, motels, lumpers (people hired to help unload the truck), and truck repairs. Swift and A-Z did not reimburse their drivers for maps, tools, meals, clothing, bedding, coolers, batteries, office supplies, first aid kits, or air fresheners. Petitioner kept receipts for his purchases in separate envelopes by category. Petitioner used a home computer to help record his driver logs and account for his expenses.

Petitioner brought his two Forms W-2, Wage and Tax Statement, and his receipts to a tax preparer who prepared petitioner's 2004 Federal income tax return. Petitioner timely filed his return using single filing status and reporting wages of $45,919 and deductions totaling $21,808 on Schedule A, Itemized Deductions. Of the $21,808 in itemized deductions, $18,755 are expenses that petitioner claimed on Form 2106, Employee Business Expenses.

The Internal Revenue Service (IRS) selected petitioner's 2004 Federal income tax return for examination. The sole adjustment was the disallowance of $12,968 (or the allowance of

$5,787) of the $18,755 deduction for unreimbursed employee business expenses.  Three categories of expenses made up the $18,755:  (1) Vehicle expenses--$469; (2) meals--$619 ($1,237 times a 50-percent reduction); and (3) "other" expenses--$17,667.  The examiner allowed in full petitioner's deduction for vehicle expenses.  The meal expenses that petitioner had listed separately were for restaurant meals while petitioner was home, which respondent disallowed.

Petitioner could not reconcile the $17,667 deduction for other expenses that he had claimed on the return.  However, a significant component was for meals he had purchased while away from home.  The examiner determined that petitioner incurred $8,308 for meals and incidental expenses away from home based on 268 days times a per diem rate of $31.  The examiner then reduced the $8,308 total by 50 percent to allow a deduction of $4,154 because section 274(n) generally permits only 50 percent of meals and entertainment as a deduction.  The record is unclear as to the specific expenses that make up the examiner's remaining allowance of $1,164 ($5,787 minus $469 and minus $4,154), other than an electronic map for $223.37.

During the audit petitioner raised the issue of his filing status for 2004.  He claimed that he is entitled to use married filing jointly rather than single status because by the end of 2004 he was in a common law marriage with Irma Angelica Cueto,

whom he married in separate civil and religious ceremonies in March 2005.

The examiner determined that petitioner's filing status for 2004 was single. Therefore, solely on the basis of the $12,968 disallowance, respondent determined a deficiency in petitioner's 2004 Federal income tax of $2,435 and an accuracy-related penalty under section 6662(a) of $487.

Petitioner timely petitioned the Court for redetermination of the deficiency, seeking an increased deduction for "other" business expenses that he claimed on Form 2106. Additionally, petitioner asks the Court to recognize his common law marriage to Ms. Cueto during 2004 and permit him to file as married filing jointly.

At trial petitioner called his wife and a friend, Ms. Brenda Hernandez, as witnesses with respect to the common law marriage. Petitioner did not call his tax preparer as a witness.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding a factual issue if the taxpayer produces credible evidence and meets the other requirements of the section,

including maintaining records required by the Internal Revenue Code and cooperating fully with the Secretary's reasonable requests for witnesses, information, documents, meetings, and interviews.  Petitioner did not fulfill the requirements of section 7491(a), and therefore the burden of proof regarding the unreimbursed employee business expense deductions and his marital status remains on petitioner.  With respect to the accuracy-related penalty, section 7491(c) places the burden of production on respondent.

The first issue for decision is whether petitioner is entitled to a deduction for unreimbursed employee business expenses in excess of the amount respondent allowed.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to a deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 6001 requires taxpayers to maintain records sufficient to establish the amount of each deduction.  See also Ronnen v. Commissioner, 90 T.C. 74, 102 (1988); sec. 1.6001-1(a), (e), Income Tax Regs.

Section 162(a) allows a deduction for ordinary and necessary expenses that a taxpayer pays in connection with the operation of a trade or business.  Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  To be "ordinary" the expense must be of a common or

frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, supra at 113. Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Section 262(a) disallows deductions for personal, living, or family expenses.

Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). For such expenses to be deductible, the taxpayer must not have the right to obtain reimbursement from his employer. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274 overrides the Cohan rule with regard to certain business expenses. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 requires stricter substantiation for travel, meals, and listed property such as cellular telephones. Section 274(d) requires taxpayers to provide adequate records or sufficient other evidence establishing the amount, time, place, and business purpose of the expense to corroborate the taxpayer's statements. Even if such an expense would otherwise be deductible, section 274 may still preclude a deduction if the taxpayer does not have sufficient substantiation. Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Keeping in mind these well-established principles, we now decide whether petitioner is entitled to additional unreimbursed employee business expenses.

With respect to the deduction for meals away from home, respondent has already determined that petitioner is entitled to use a per diem rate rather than actual expenses, and that 268 is the proper number of days petitioner was away from home during 2004. Petitioner does not challenge these determinations.

Respondent also determined that $31 per day is the correct per diem rate that petitioner should use for meals and incidentals expenses (M&IE) while he was on the road in the

continental United States (CONUS) during 2004.  We disagree.
While $31 is generally the correct standard CONUS rate per Rev.
Proc. 2003-80, secs. 3.02(1)(a) and 4.01, 2003-2 C.B. 1037, 1039,
the same revenue procedure provides a separate $41 CONUS per diem
rate for employees in the transportation industry.  Id. sec.
4.04(2), 2003-2 C.B. at 1040.  The definition of transportation
industry employee includes in pertinent part an individual whose
work "directly involves moving people or goods by * * * truck"
and "regularly requires travel away from home which, during any
single trip away from home, usually involves travel to localities
with differing Federal M&IE rates."  Id. sec. 4.04(4), 2003-2
C.B. at 1040.  Petitioner meets the definition because he
directly moved goods by truck, his 268 days away from home
constitute regular travel, and he made trips away from home
involving numerous localities with varying Federal M&IE rates.

Additionally, the 50-percent allowance for meals under
section 274(n) is superseded by a more generous 70 percent
allowance for 2004 under section 274(n)(3)(B) for individuals
subject to "the hours of service limitations of the Department of
Transportation".  Sec. 274(n)(3)(A).  Truck drivers are subject
to Department of Transportation hours of service limitations,
e.g., generally truck drivers may not drive more than 60 hours in
any period of 7 consecutive days or more than 70 hours in 8

consecutive days.  See United States v. McCord, Inc.; 143 F.3d 1095, 1096 (8th Cir. 1998); 49 C.F.R. sec. 395.3 (2008).

Thus, instead of the deduction of $4,154 that respondent allowed, petitioner is entitled to a deduction of $7,691.60 for meals and incidental expenses on the basis of 268 days away from home at $41 per day times an allowance rate of 70 percent.

With respect to the "other" expenses that petitioner seeks to deduct in excess of the $1,174, the Court received into evidence from petitioner a spreadsheet and copies of receipts totaling $6,212.25, comprising three subcategories of expenses: $2,161.51 for cellular telephone charges; $1,765.34 for restaurant meals that petitioner purchased while in his hometown; and $2,286.40 for unreimbursed supplies that petitioner bought while on the road.

With respect to the cellular telephone bills totaling $2,161.51, petitioner's employers suggested that drivers might find cellular telephones useful but did not reimburse its drivers for a cellular telephone.  Petitioner used the cellular telephone to contact other truckers, shippers, and receivers to discuss, among other things, the best routes for his particular destination considering his load type, load weight, and vehicle size, information that is not readily available from typical road maps.  Petitioner also used the cellular telephone for personal

calls. Petitioner did not keep a log of his calls, but he estimated that 80 percent of the calls had a business purpose.

Section 274(d)(4) governs the substantiation requirements related to listed property, which under section 280F(d)(4)(A)(v), includes cellular telephones. Under section 274(d) the taxpayer must maintain adequate records or present corroborative evidence to support: (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The Court may not use the Cohan doctrine to estimate expenses governed by section 274(d). Boyd v. Commissioner, 122 T.C. at 320.

Thus, while petitioner has substantiated that he paid cellular telephone charges and he has established that he had a business purpose for a cellular telephone, he has provided no contemporaneous log or any other credible evidence of the portion of the cellular telephone use that was business related. The burden is on petitioner to support the business usage. Because Congress has decided that a cellular telephone is listed property, we may not estimate. Accordingly, petitioner is not entitled to a deduction for his cellular telephone expenses for 2004.

With respect to the hometown meals, petitioner provided receipts to show that he paid $1,765.34 for restaurant meals in

between work assignments. Petitioner contends that although his employers did not require the meals, the meals had a business purpose in that they gave him an opportunity to meet with other drivers to gain their wisdom as to how best to advance his driving skills, e.g., learning safety tips, the rules for hours worked, and how to increase his earnings. Petitioner wrote on the backs of the receipts the first but not last names of the person(s) with whom he ate. He did not record the business purpose of the meals. Included in the total were payments of $225 and $200 to purchase meals for several other drivers as appreciation for their advice.

In instances where section 162(a) trade or business expenses overlap with section 262(a) personal expenses, section 262 takes precedence. Heineman v. Commissioner, 82 T.C. 538, 542 (1984). Further, a deduction for meals and entertainment expenses, similar to the deduction for travel expenses, is subject to strict substantiation requirements. Sec. 274(d)(2). Moreover, the individual must show more than a tangential connection with the business; he must show that the expense is "directly connected" with the trade or business. Sec. 1.162-1(a), Income Tax Regs.

Petitioner has not sufficiently connected the meals with a bona fide trade or business purpose. Moreover, the receipts that petitioner submitted, while showing dates and prices, did not

show last names or document a business purpose. See sec. 274(d) (flush language). Thus petitioner did not establish a business purpose that transcends the ordinary personal benefit of eating an enjoyable meal with colleagues. Sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Accordingly, for the foregoing reasons we find the hometown meals are a personal expense, and we sustain respondent's disallowance. See sec. 1.262-1(b)(5), Income Tax Regs.

With respect to the $2,286.40 in unreimbursed supplies, many of the receipts just showed dollar amounts with a cryptic description, e.g., a credit card purchase for $26.97 for "Luggage Ro EAC" from an unidentified store, and $43.29 for "G-R-O-C" from the Drivers Travel Mart in Anna, Texas. Many other receipts had no description at all, such as a $323.83 credit card receipt from Wal Mart in Houston, Texas; $23.46 from the Flying J Travel Plaza in Carmel Church, Virginia; and $13.65 from Travel Centers of America in Tallulah, Louisiana. A few receipts had an apparent business purpose: $75.73 for a CB radio, $59.95 for an atlas map, and $5.76 for a small map. However, most of the other identifiable purchases were for seemingly personal purposes: $115.26 from a Wal Mart in Humble, Texas, for shampoo and office supplies; and $99.86, $188.84, and $19.99 from a Sam's Club for an executive chair, an L-shaped desk, and Nike tennis sneakers.

Examining these receipts we find that petitioner did not provide adequate substantiation establishing a business purpose under section 274(d). In many cases the receipts did not describe and petitioner did not furnish an explanation of what he purchased. Therefore, even if we were to provide an estimate under the Cohan doctrine, the amount that we would estimate as business rather than section 262(a) personal expenses would be far less than the nearly one-half, or $1,164 that respondent allowed. Accordingly, we find no ground to increase petitioner's deduction for "other" expenses beyond the $1,164 that respondent has already allowed.

The second issue for decision is whether petitioner is entitled to a filing status of married filing jointly for 2004.

State law determines a person's marital status for Federal income tax purposes. Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967); Rev. Rul. 58-66, 1958-1 C.B. 60. The State of Texas recognizes common law marriages but requires that three conditions be met: (1) The parties must agree to marry, (2) they must live together in Texas as husband and wife, and (3) they must represent to others that a marriage exists. Tex. Fam. Code Ann. sec. 2.401 (Vernon 2006); Warren v. Sec. of HHS, 868 F.2d 1444, 1446 (5th Cir. 1989).

Petitioner and Ms. Cueto agreed to marry, and in fact they did marry in 2005. We find credible their testimony that they

had lived together since 2002.  The critical test then is the third one, whether they represented to others that they were married.  Representing to others means "holding each other out to the public."  Estate of Claveria v. Claveria, 615 S.W.2d 164, 166 (Tex. 1981); see also Russell v. Russell, 865 S.W.2d 929, 932 (Tex. 1993) (requiring "public representation"); Ex parte Threet, 333 S.W.2d 361, 364 (Tex. 1960) (isolated reference to a person as his husband or wife, and similarly an introduction to two close friends and telling two or three other persons does not constitute sufficient evidence of a common law marriage) and Grigsby v. Reib, 153 S.W. 1124, 1130 (Tex. 1913) ("The cohabitation must be professedly as husband and wife, and public, so that by their conduct towards each other they may be known as husband and wife.").

In Russell v. Russell, supra at 931-932, the Supreme Court of Texas observed that although Texas has recognized common law marriages since 1847, the recognition is a "grudging" one in which the State "merely tolerates" but "does not favor" such marriages.  In 1970 the Texas legislature enacted a statute to allow a couple to file a declaration of informal marriage with the county clerk.  Id.  In 1989 the legislature amended the statute to make the proof of a common law marriage more difficult, restricting the ability of courts to simply infer a marriage.  Id.  Thus, the effect of the 1989 amendment is to

tighten the rules for inferring a common law marriage, requiring the evidence to be more convincing than before the 1989 agreement. <u>Id.</u> Accordingly, in a society where nonmarital cohabitation for extended periods is far more common than it once was, the fact finder will have to weigh the evidence more carefully than in the past. <u>Id.</u> Occasional uncontradicted reference to "my wife" or "my husband" needs corroboration, and the context of the reference requires greater scrutiny. <u>Id.</u> A forthright assertion of marriage with the consequence of liability, such as when an alleged spouse seeks admission of the other to a hospital, is highly probative of a tacit agreement. <u>Id.</u>

Though Ms. Cueto and Ms. Hernandez testified on petitioner's behalf, their testimony was supportive but not decisive. Ultimately, four factors weigh against petitioner's claim that he was in a common law marriage in 2004. First and importantly, petitioner purchased a home in 2004 which became the couple's primary residence. Petitioner could have titled the home and mortgage note jointly in his and Ms. Cueto's names, but he did not do so. This omission is highly probative because under <u>Russell v. Russell</u>, <u>supra</u>, it was an opportunity for a forthright assertion of marriage when there was a significant consequence of liability. Second, petitioner did not add Ms. Cueto to the utility bills or his bank account, and she did not change her

driver's license to her married name until 2005. Third, as noted above, the State of Texas provided residents with the opportunity to register their common law marriage with the local county clerk, but again, petitioner chose not to do so. Fourth and also significant, petitioner reported his filing status as single on his 2004 Federal income tax return. He had the opportunity to alert the world, or at least the IRS, that he believed he was married, but he chose not to do so. Only later when his return was audited did petitioner raise the issue of a common law marriage. For the foregoing reasons, we sustain respondent's determination of petitioner's filing status as single for 2004.

## Conclusion

To reflect our disposition of the issues,

Decision will be entered under Rule 155.