**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0078n.06

**No. 10-2695**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ALAN SILBER, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**

***Jan 23, 2012***

LEONARD GREEN, Clerk

Before: SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge. A jury convicted Dr. Alan Silber of defrauding Medicare to the tune of several hundred thousand dollars by prescribing expensive medications to patients who did not need them. Silber claims the district court used the wrong method for selecting the jury, mistakenly excluded evidence and applied an inapplicable sentencing enhancement. We affirm.

I.

Dr. Silber worked at a medical clinic in suburban Detroit from December 2006 through March 2007. A government investigation determined that the clinic was engaged in large-scale healthcare fraud, generating hundreds of thousands of dollars in revenue by billing Medicare for expensive, medically unnecessary drugs administered in diluted form. The idea was that Silber would prescribe two medications—Acthar and Cotrosyn—to homeless "patients" who visited the

clinic. The patients received kickbacks for their time and trouble. And the clinic collected Medicare fees for the drugs they claimed to dispense.

A federal grand jury indicted Silber on one count of conspiracy to defraud a government healthcare benefits program and six counts of executing the scheme to defraud. *See* 18 U.S.C. §§ 371, 1347. At trial, the government's expert testified that the drugs were not medically appropriate for the conditions Silber diagnosed. Silber offered an expert of his own, Professor Jesse Vivian, but the district court excluded his testimony after concluding he was not an expert on the relevant issues. The jury convicted Silber on all counts, save the conspiracy charge, and the court sentenced him to 36 months, which was below the guidelines range of 51 to 63 months.

## II.

Silber claims that the district court failed to follow the jury-selection procedures laid out in Rule 24 of the Federal Rules of Criminal Procedure. That rule requires the parties to select alternate jurors independently from the initial group of jurors, *see* Fed. R. Crim. P. 24(c)(1), and says that the prosecution and defense each receive an additional peremptory challenge to use in selecting the alternates, *see* Fed. R. Crim. P. 24(c)(4)(A). The district court instead utilized a blind-draw system for determining the alternates, in which the parties initially selected fourteen undifferentiated jurors and the court clerk randomly designated two as alternates before the jury retired to deliberate.

Silber waived any objection to the blind draw system when he agreed to it before jury selection. *See United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002). While the

agreement was not originally recorded on the docket, the district court—exercising its authority to supplement an incomplete record, *see* Fed. R. App. P. 10(e)(2)(B)—has clarified that "all parties agreed in advance of jury selection . . . that alternate jurors would be removed through a blind draw." R. 219.

Silber responds that the district court abused its discretion when it resolved this "contested issue of fact" without holding an evidentiary hearing. Reply Br. at 10. But Rule 10(e)(2)(B) "does not require that the district court hold an evidentiary hearing, only that it consider and settle the dispute." *United States v. Brika*, 416 F.3d 514, 530 (6th Cir. 2005). Once it has done so, "the court's determination is conclusive unless intentionally false or plainly unreasonable." *United States v. Hernandez*, 227 F.3d 686, 695 (6th Cir. 2000). This determination is neither.

Silber's appellate counsel was not present at trial and concedes he cannot contest the district court's resolution of the dispute based on personal knowledge. Silber Br. at 41. And Silber has not provided an affidavit from his *trial* counsel contradicting the district court's account. Silber instead points to a stray comment by his co-defendant's attorney, after the district court had chosen the two alternates, that "with all due apologies, we weren't given a choice. You just said you were going to do it. I think that you got to do that over again or revisit it overnight maybe." R. 204 at 102. To Silber's mind, this statement suggests that no waiver occurred—that the district court pressured the parties into agreeing to the blind-draw procedure.

The better reading of the transcript, however, is that defense counsel were upset they had not been given the opportunity to object when one of the two black members of the jury was selected as an alternate—that is, that they were "given [no] choice" but to accept the result of the blind draw. This reading is consistent with the prosecutor's uncontradicted statement in response: "We all agreed in advance to a blind draw." R. 204 at 103. And it also explains why Silber's trial attorney, in response to the district court's question about how they could "undo this blind draw," said that the solution was to "[r]edo it and continue to redo it," apparently until it selected two of the non-black jurors—hardly a condemnation of the use of a blind draw system (though certainly a curious understanding of how a "blind" draw should work). R. 204 at 103.

This more localized objection—to the result of the blind draw, not the blind draw itself—is consistent with the district court's supplemental determination that the parties agreed to the modified procedure. In the absence of more concrete evidence that the record supplement is "intentionally false or plainly unreasonable," *Hernandez*, 227 F.3d at 695, we cannot say that the district court abused its discretion.

Nor did the district court abuse its discretion in refusing to permit Professor Vivian to testify as an expert. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). The disputed issue in the case was whether the relevant prescriptions were medically appropriate, and on that point Vivian had nothing to add, as he conceded. *See* R. 140-3 at 55. Vivian was a pharmacist, not a doctor. His experience with the drugs was limited—having dispensed them a few times in the late 1970s and 1980s—and he disclaimed being an expert in the diseases Silber prescribed the drugs to treat, R.

140-3 at 54. The district court reasonably found that Vivian did not have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (internal quotation marks omitted).

In another context, Vivian's expertise might have been useful. Silber suggested that Vivian, while not an expert on the drugs at issue, was an expert on the more general topic of the appropriateness of using medications for purposes not mentioned on their FDA-approved labels. But the appropriateness of such off-label applications *in general* was not at issue; the prosecution conceded that off-label use was sometimes appropriate, and Silber could have established that point through cross-examination of the prosecution's medical expert. Whatever reliable expert testimony Vivian might have given was not relevant here, and the district court could properly exclude it on that ground. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The district court also correctly excluded Silber's testimony that he received no overbilling notices from Medicare while working in earlier jobs. Silber offered the evidence to show his honest character. *See* R. 203 at 93 ("I think that demonstrates his character . . . ."). Although a criminal defendant generally may introduce character evidence, *see* Fed. R. Evid. 404(a)(2)(A), he must do so through "testimony about [his] reputation or by testimony in the form of an opinion," Fed. R. Evid. 405(a). Only where "a person's character or character trait is an essential element" of the charge (not true here) may the defendant introduce character evidence about "relevant specific instances of the person's conduct." Fed. R. Evid. 405(b).

The testimony at issue falls squarely within Rule 405's implicit prohibition. A leading treatise provides a helpful example: "a federal inspector charged with accepting a bribe from a meat packer can call a character witness to show his reputation for being honest, but he may not call other meat packers to testify that he did not solicit bribes from them." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 191 (discussing *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978)). Silber's attempt to establish his character for honesty by showing that Medicare had not previously noticed any overbillings from him was, if anything, even more ham-handed: rather than calling *others* to testify to specific instances in which he had not behaved dishonestly, he attempted to do so himself. The court properly excluded the testimony. *See* Fed. R. Evid. 404(a), 405(a).

Silber insists that the proffered testimony was not character evidence, but rather "[e]vidence of a person's habit" admissible under Rule 406. Accepting this argument, however, would make superfluous Rule 405's careful delineation of when evidence of specific instances of a person's conduct is admissible. Silber cannot recast his character evidence as evidence of habitually displaying good character in order to get around Rule 405. At least without a "habit" more concrete than not bilking Medicare in the past (or, more precisely, not being caught doing it), we cannot permit Silber "to circumvent restrictions on character evidence by repackaging it as habit evidence." *United States v. Serrata*, 425 F.3d 886, 906 (10th Cir. 2005) (internal quotation mark omitted).

Just as we find no grounds for reversal in Silber's trial, so too we find no errors in his sentencing. The district court properly applied a two-level sentencing enhancement for offenses "involv[ing] . . . the conscious or reckless risk of death or serious bodily injury." U.S.S.G.

§ 2B1.1(13)(A). (The provision has since been moved to U.S.S.G. § 2B1.1(14)(A), but remains otherwise unchanged.) The prosecution's expert testified that the drugs at issue presented just such a risk, and Silber does not contest the district court's acceptance of that position on appeal. *See* Silber Br. at 48. He instead argues that he was unaware of that risk when he committed the offenses.

Our sister circuits are split over whether a defendant must know of a risk in order to make taking that risk "reckless," at least in connection with those guidelines that do not provide their own definition of the term. *Compare United States v. McCord, Inc.*, 143 F.3d 1095, 1098 (8th Cir. 1998) (defendant must be subjectively aware of risk) *with United States v. Maestas*, 642 F.3d 1315, 1321 (10th Cir. 2011) (subjective awareness not required if risk was obvious); *United States v. Lucien*, 347 F.3d 45, 56–57 (2d Cir. 2003) (same); *United States v. Johansson*, 249 F.3d 848, 858 (9th Cir. 2001) (same). We need not take sides on this debate because the district court concluded it was "[m]ore likely than not" that "Silber, as a trained doctor, was aware o[f] the serious risks, including weakening of the immune system, loss of consciousness and liver damage, associated with the use" of the drugs on the clinic's "vulnerable patient population." R. 193 at 17. Silber argues on appeal that reasonable doctors could disagree about the likelihood that the drugs would cause serious harm. But that does not make the court's finding that Silber was aware of any risk clearly erroneous, as it must have been in order to justify our intervention. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

III.

For these reasons, we affirm.